(131 So. 438)

**DAVES v. LUFKIN et al.**

1 Div. 618.

Supreme Court of Alabama.

Dec. 18, 1930.

172

See also 220 Ala. 443, 125 So. 811.

Inge, Stallworth & Inge, of Mobile, for appellant.

D. R. Coley, Jr., and Gordon, Edington & Leigh, all of Mobile, for appellees.

BOULDIN, J.

In 1928, Lufkin & Robinson entered into a joint enterprise with C. H. Millsap of Atmore, Ala., to grow potatoes for the market. Millsap furnished the seed potatoes as the equivalent of the fertilizer furnished by Lufkin & Robinson. For the additional contributions of Lufkin & Robinson in furnishing the land and labor to grow, gather and ship the product, they were to receive $1,750 out of the first proceeds.

At market time it was arranged for Millsap to do the marketing. Accordingly, bills of lading for six cars were made out to Millsap, as consignee, destination, Nashville, Tenn. He, in turn, assigned them to Alabama Fruit & Produce Company of Mobile, the tradename under which T. B. Daves was doing business.

Shipments of this sort were reconsigned en route as market conditions suggested. Daves accordingly handled the shipments and received the net proceeds $1,468.68. Refusing to pay over the same to Lufkin & Robinson after being advised of the nature of their claim, the present suit was brought for conversion.

Defendant's side of the case is this:

On February 1, 1928, Daves, in the name of Alabama Fish & Oyster Company, made a contract with Millsap to grow potatoes, or have them grown for the market. Daves was to furnish Millsap nine cars of seed potatoes, 5,400 bushels at $2.20 per bushel, taking a note for the price. Millsap agreed to furnish and use not less than 1500 pounds of fertiliz-

er per acre, and that the potatoes be planted "on land on which he will have a full release from landowner stating that said crop of potatoes will not be held or molested for any reason whatever." At market time Millsap was to deliver the potatoes to Daves on board cars, Daves to market same on a commission basis. The proceeds, less commissions, were to be applied to payment of all indebtedness from Millsap to Daves and balance paid over to Millsap.

At shipping time Millsap turned in the bills of lading for the Lufkin & Robinson potatoes along with a large number of other shipments moving at the same time.

Lufkin & Robinson knew nothing of the contractual relations between Daves and Millsap at the time they contracted with Millsap nor until after the shipment, when they sought to get returns on their potatoes.

Neither had Daves any knowledge of the contract between Millsap and Lufkin & Robinson until about the time of last shipment of their potatoes. Daves applied the proceeds on Millsap's account, leaving a large balance still unpaid. Lufkin & Robinson have only gotten $250 out of the crop, leaving $1,500 still due them out of the first proceeds.

Probably it should be said for Millsap that he shipped some 60 cars of potatoes, but due to market conditions, the entire proceeds did not equal the cost of the seed potatoes and fertilizers he bought later from Daves.

There is no material controversy as to the facts. Was judgment properly rendered for plaintiffs, Lufkin & Robinson?

■ They were tenants in common with Millsap in the ownership of the potatoes.

■■ One tenant in common may sue the other, or any one acting for him, in trover for the conversion of his interest in the property by a disposition of the property for his exclusive benefit; or if he sells the property by agreement, the proceeds to be shared in a given manner, and such proceeds are converted to his exclusive use, the injured party may waive the tort and sue in assumpsit.

■ Daves having received and still retaining the proceeds is liable to plaintiffs under the count for money had and received, the entire sum being money belonging ex æquo et bona to plaintiffs, unless under the facts Daves is lawfully entitled to retain the fund.

See former decision, 220 Ala. 443, 125 So. 811.

Appellant relies upon the doctrine that where one of two innocent parties must suffer by the act of a third party, it must be he who has put the third party in position to impose upon the other.

The taking of the bills of lading to Millsap for purposes of having him act in the sale of the potatoes does not bring these plaintiffs within such doctrine merely because, unknown to them, Millsap was under contract with Daves. Indeed, Daves first put Millsap in possession of the seed potatoes with authority to have them planted and a crop grown, thus putting Millsap in position to contract with Lufkin & Robinson.

True, Lufkin & Robinson put Millsap in position to sell the potatoes and to receive payment therefor on their behalf; but this carried no authority for him to sell them in payment of his own debt, nor to turn them over to Daves to sell for payment of Millsap's debt to him. Hill, Fontaine & Co. v. Helton, 80 Ala. 528, 1 So. 340.

■■ So, the case must turn on whether Daves was in the position of a bona fide purchaser. This must be determined upon the authority of Millsap derived from Lufkin & Robinson, not on relations unknown to them existing between Millsap and Daves.

The assignment of a bill of lading by the consignee therein passes only the possession and title held by the consignee. The bill of laden is a token or symbol of the property and passes such title only as the consignee held. Voss & Co. v. Robertson, Browne & Co., 46 Ala. 483; Commercial Bank of Selma v. Hurt, 99 Ala. 130, 12 So. 568, 19 L. R. A. 701, 42 Am. St. Rep. 38; Cosmos Cotton Co. v. First Nat. Bank of Birmingham, 171 Ala. 392, 54 So. 621, 39 L. R. A. (N. S.) 1173, Ann. Cas. 1913B, 42; 10 C. J. 206.

Moreover, to become a bona fide purchaser it is essential that Daves should have parted with value on the faith of the possession of Millsap with indicia of title. Hawkins v. Damson, 182 Ala. 83, 62 So. 15.

In support of this requirement appellant points out that during the period of the movement of plaintiffs' six cars Daves advanced to Millsap additional sums on drafts aggregating $1,500.

These drafts were on general account, charged up as such, and not against these specific shipments. Up to that time Millsap had shipped some thirty-four cars, the proceeds of which aggregated more than $8,500.

Moreover, it appears that after full knowledge of the status of these shipments of plaintiffs' potatoes, Daves continued to make further advances aggregating more than those made up to that time. The more reasonable view is that all these advances were made in aid of the enterprise as a whole, and no one of the drafts, nor any determinable part of the whole, was made on plaintiffs' potatoes.

Under the agreed facts this fund belongs to plaintiffs.

Some other questions are raised which have been fully considered. We find in them no good ground to reverse. As they do not involve the merits of the cause, we forego any further discussion.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.